IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK BRUNCKHORST CO., | : | MISCELLANEOUS |
| | : | NO.  12-0217 |
| v. | : | |
| | : | |
| MICHAEL R. IHM and | : | |
| SUNSET DELI PROVISIONS, INC. and | : | |
| SOUTH SHORE DELI PROVISIONS, INC | : | |
| | : | |
| O'NEILL, J. | | OCTOBER 23, 2012 |

## MEMORANDUM

Presently before me is nonparty Dietz and Watson's ("D&W") Motion To Quash Or Modify The Subpoenas Issued To Dietz and Watson and Louis J. Eni, Jr. and For a Protective Order, an opposition filed by plaintiff Frank Brunckhorst and a response in support of the motion to quash filed by D&W.  For the following reasons I will deny the motion to quash and enter a protective order.

## BACKGROUND

The Motion to Quash was brought in connection with litigation currently pending in the United States District Court for the Southern District of California.[1]  Plaintiff Frank Brunckhorst Co. is the national distributor for Boars Head Provisions, Co., Inc., which produces delicatessen products.  D&W also produces delicatessen products.  In the California action, Brunckhorst alleges that the defendants—during their relationship with Brunckhorst—began dealings with, and ultimately entered into a distributorship with, Brunckhorst's competitor D&W.  D&W is not a party to the California litigation.  On August 19, 2011, Brunckhorst filed a complaint in the United States District Court for the Southern District of California.  On September 12, 2011

---

[1] For a more extensive background, see No. 11-1883 (S.D. Cal.), Dkt. No. 46,"Order Re Joint Motion for Determination of Discovery Dispute."

defendants filed an answer.  On December 16, 2011 that Court issued a Scheduling Order governing pretrial deadlines and set a fact discovery deadline of April 16, 2012.  On March 2, 2012, that Court issued an order concerning the proposed protective order governing the parties' exchange of confidential information, and addressing the defendants' concerns about giving Brunckhorst access to sensitive information related to defendants relationship with D&W, Brunckhorst's competitor.  See No. 11-1883 (S.D. Cal.), Dkt. No. 24.  On March 8, that Court issued an Order granting the proposed protective order submitted by the parties.  No. 11-1883 (S.D. Cal.), Dkt. No. 27.

The Court in the California litigation has issued numerous rulings regarding discovery disputes and deadlines.  On March 9, 2012 that Court issued an Order granting a joint motion for extension of time to file a discovery motion as to all previously issued discovery requests.  See No. 11-1883 (S.D. Cal.), Dkt. No. 29.  On April 13, 2012 the parties filed another joint motion to extend all pretrial deadlines by five months, asserting that they had good cause for such an extension because "the parties had a dispute over the terms of a protective order governing confidential information, filed a discovery motion on April 9, 2012 and 'have other discovery issues or disputes.'"  See No. 11-1883 (S.D. Cal.), Dkt. No. 32.  While noting that "discovery disputes are common in modern litigation and do not constitute good cause for the lengthy extension of all pretrial dates," that Court ordered that all fact discovery be completed by July 16, 2012, stating that

> "Completed" means that all discovery under Rules 30-36 of the Federal Rules of Civil Procedure, and discovery subpoenas under Rule 45, must be initiated a sufficient period of time in advance of the cut-off date, **so that it may be completed** by the cut-off date. . . . **Absent an order of the court, no stipulation continuing or altering this requirement will be recognized by the court**.

Id. at 2 (emphasis in original).  On April 18, 2012 that Court issued an order denying plaintiff's motion to compel further responses to discovery seeking, *inter alia*, documents relating to the termination of the business relationship between the parties or "the development of [defendants'] arrangement with D&W" without prejudice because the parties failed to comply with local rules in not conducting an adequate meet and confer.  See No. 11-1883 (S.D. Cal.), Dkt. No. 33, ECF p. 1-2 (also noting that defendants' initial disclosures did not comply with Rule 26).  On May 10, 2012 that Court issued an order granting the parties additional time to file motions to resolve any remaining discovery matters as the defendants had failed to provide additional documents and information as agreed to at the parties' meet and confer held on April 27, 2012, and thus the parties were unable to determine whether another joint motion regarding discovery was necessary.  See No. 11-1883 (S.D. Cal.), Dkt. No. 37, ECF p. 1-2.

On September 10, 2012 Brunckhorst filed an amended complaint adding South Shore Deli Provisions, Inc. as a defendant as to all claims on a theory of successor liability.  In the interim, between the Court's May 12 Order and the Order permitting Brunckhorst to file an amended complaint, the parties filed three more motions requesting that the California Court resolve discovery disputes and extend deadlines.  See No. 11-1883 (S.D. Cal.), Dkt. Nos. 38-40. On September 26, 2012 the Court in the California action issued an order addressing the two Joint Motions for Determination of Discovery Disputes and directed defendants to produce documents in response to requests that are identical or substantially similar to those requested from D&W in the instant subpoena by October 12, 2012.  See No. 11-1883 (S.D. Cal.), Dkt. No. 46.  The September 26, 2012 Order also discussed issues of relevance, confidential and sensitive commercial information, defendants' degrees of compliance with discovery requests, and the

underlying causes of action.  Id. at ECF p. 5-22.  On that same day, the California Court issued a

second Order regarding discovery.  The Court stated that a discovery

> "schedule may be modified only for good  cause and with the
> judge's consent." Fed. R. Civ. P. 16(b)(4).  The "good cause"
> requirement of Rule 16 primarily considers the diligence of the
> party seeking the amendment.  Johnson  v. Mammoth Recreations,
> Inc., 975 F.2d 604, 609 (9th Cir. 1992).  "The district court may
> modify the pretrial schedule if it cannot reasonably be met despite
> the diligence of the party seeking the extension."  Id. (internal
> citation and quotation marks omitted).  If the party seeking the
> modification "was not diligent, the inquiry should end" and the
> motion to modify should not be granted.  Id.

See No. 11-1883 (S.D. Cal.), Dkt. No. 47, ECF p. 2.  The Court found that "the parties have not

established good cause for another lengthy extension of all case management dates."  Id.

However, in light of its other Order issued the same day regarding pending discovery production,

the Court extended the fact discovery deadline until November 13, 2012 "but only for the

purpose of completing depositions.  The parties have had plenty of time to complete written

discovery.  Accordingly, no more written discovery requests may be served in this case without

leave of Court."  See No. 11-1883 (S.D. Cal.), Dkt. No. 47.

On or after August 14, 2012, Brunckhorst served subpoenas seeking the 30(b)(6)

deposition of D&W and the deposition of D&W's President  Louis  J.  Eni, Jr.  The subpoena to

D&W was accompanied by requests that various documents be produced in connection with the

depositions.  See No. 12-0217, Dkt. No. 6, Hyman Decl. Ex 2.  D&W filed its Motion to Quash

on August 28, 2012.  No. 12-0217 (E.D. Pa.), Dkt. No. 1.[2]

---

[2] On October 12, 2012, I issued an Order in response to D&W's Motion To Quash
transferring the motion to the United States District Court for the Southern District of California.
See No. 12-0217 (E.D. Pa.), Dkt. No. 9.  On October 15, 2012 D&W filed a motion to stay the
transfer so that D&W could petition the Court of Appeals for a writ of mandamus.  See No. 12-
0217 (E.D. Pa.), Dkt. No. 10.  Brunckhorst filed an opposition to D&W's motion as well as its
own motion for reconsideration of my October 12 Order.  See No. 12-0217 (E.D. Pa.), Dkt. Nos.
12-13.  On October 17, 2012, after receiving submissions from both D&W and Brunckhorst

D&W objects to the subpoenas as an attempt by Brunckhorst to discover the trade secrets and confidential commercial information of a competitor.  D&W also argues that the documents are irrelevant to the claims and defenses in the California litigation.  Finally, D&W objects to the subpoenas on the ground that the fact discovery deadline expired before Brunckhorst's service of the subpoenas.

Brunckhorst argues that D&W and Eni are crucial witnesses in the pending action and information concerning defendants' relationship and financial arrangements with D&W is necessary to show whether and to what extent defendants received instructions, directives, incentives or support from D&W to implement the alleged scheme.  Brunckhorst asserts that the document requests and deposition topics in the subpoenas were carefully tailored to elicit information concerning D&W's knowledge and support of and participation in defendants' allegedly unlawful conduct and that it does not seek information about D&W's products, financials or generally-applicable policies.  Moreover, Brunckhorst asserts that the operation of a protective order in the California case which limits access to confidential D&W information to for use solely for the litigation is sufficient to protect any confidential information or trade secrets that D&W fears will be disclosed.  <u>See</u> No. 12-0217 (E.D. Pa.), Dkt. No. 6, ECF p. 14. Brunckhorst further argues that because the new discovery deadline is November 13, 2012, D&W's objection to the subpoeanas based on the expiration of the fact discovery deadline has been rendered moot.

**DISCUSSION**

The Federal Rules of Civil Procedure allow the examination of a deponent concerning "any matter, not privileged, which is relevant to the subject matter involved in the pending

---

which requested that I decide the motion to quash on the merits, <u>see</u> Dkt. No. 1, No. 12-0217, ECF p. 3 and Dkt. No. 13, No. 12-0217, ECF p. 2, I vacated the October 12 Order.  <u>See</u> No. 12-0217 (E.D. Pa.), Dkt. No. 14.

action." Fed. R. Civ. P. 26(b).  While "the scope of discovery under the Federal Rules is . . .

broad, this right is not unlimited and may be circumscribed."  Bayer AG v. Betachem, Inc., 173

F.3d 188, 191 (3d Cir. 1999).  Under Fed. R. Civ. P. 26(b)(1), "discovery need not be confined to

matters of admissible evidence but may encompass that which 'appears reasonably calculated to

lead to the discovery of admissible evidence.'"  Foster v Berwind Corp., No. 90-0857, 1990 WL

209288, at *6 (E.D. Pa. Dec. 12, 1990).  Courts have interpreted the relevancy requirement under

Rule 26 broadly:

> Relevancy is to be broadly construed for discovery purposes and is
> not limited to the precise issues set out in the pleadings or to the
> merits of the case.  Rather, discovery requests may be deemed
> relevant if there is any possibility that the information may be
> relevant to the general subject matter of the action.  As a result,
> discovery rules are to be accorded broad and liberal construction. .
> . . [W]here there is doubt over relevance, the rule indicates that the
> court should be permissive.

Foster, 1990 WL 209288, at *6; see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351

(1978).[3]

Rule 45 of the Federal Rules of Civil Procedure establishes the rules for discovery

directed to individuals and entities that are not parties to the underlying lawsuit.  Fed. R. Civ. P.

45.  A subpoena under Rule 45 "must fall within the scope of proper discovery under Fed. R.

Civ. P. 26(b)(1)."  OMS Invs., Inc. v. Lebanon Seaboard Corp., No. 08–2681, 2008 WL 4952445,

* 2 (D.N.J. Nov.18, 2008).  Notably, "[a] district court whose only connection with a case is

---

[3]Moreover, courts have significant discretion when resolving discovery disputes.  Gallas v. Supreme Court of Pa., 211 F.3d 760, 778 (3d Cir. 2000) (stating a trial court's discovery ruling will only be disturbed if "the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible").  This includes the discretion to prevent oppressive, harassing, inconvenient and burdensome depositions and disclosures.  Fed. R. Civ. P. 26(b)(2)(C); Taggart v. Wells Fargo Home Mortg., Inc., No. 10-00843, 2012 WL 4462633, at *2 (E.D. Pa. Sept. 27, 2012).  Additionally, confidential commercial information warrants special protection under Rule 26.  Smith & Wesson v. U. S., 782 F.2d 1074, 1082 (1st Cir. 1986); Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1323 (Fed. Cir. 1990)

supervision of discovery ancillary to an action in another district should be 'especially hesitant to pass judgment on what constitutes relevant evidence thereunder.'" Pepsi-Cola Metro. Bottling Co., Inc. v. Ins. Co. of N. Am., Inc., No. 10-222, 2011 WL 239655, at *2 (E.D. Pa. Jan. 25, 2011) (citations omitted).  Therefore, if relevance is unclear, Rule 26(b)(1) indicates that the court should be permissive.  Id.; see also In re Gateway Eng'rs, Inc., No. 09-209, 2009 WL 3296625, at *3 (W.D. Pa. Oct.9, 2009).

When a nonparty receives a subpoena to which it objects, it has several options, including: file a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(c)(3)(A), or seek a protective order pursuant to Fed. R. Civ. P. 26(c), each of which D&W has done here. See, e.g., Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1322–23 (Fed. Cir. 1990) (outlining options).  Federal Rule of Civil Procedure 45(c)(3)(A) authorizes a court to quash or modify a subpoena if it subjects a person to an undue burden.  Pepsi-Cola Metro. Bottling Co., Inc. v. Ins. Co. of N. Am., Inc., No. 10-222, 2011 WL 239655, at *3 (E.D. Pa. Jan. 25, 2011). Rule 45(c)(3)(A) also authorizes the Court to quash a subpoena if it requires the production of confidential commercial information.  Id.  A party seeking discovery bears the initial burden of demonstrating the requested discovery is relevant to its claim or defense.  Morrison v. Phila. Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001).  Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  McConnell v. Canadian Pac. Realty Co., 280 F.R.D. 188, 193 (M.D. Pa. 2011).  In considering a motion to quash or modify a subpoena, a court may also grant such a motion if it finds that the movant has

met the "heavy burden of establishing that compliance with the subpoena would be 'unreasonable and oppressive.'" Id., quoting Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enter., Inc., 160 F.R.D. 70, 72 (E.D.Pa.1995) (emphasis added). This burden is "particularly heavy to support a motion to quash as contrasted to some more limited protection" such as a protective order. Pepsi-Cola Metro. Bottling Co., Inc., 2011 WL 239655, at *3, quoting Westinghouse Elec. Corp. v. City of Burlington, 351 F.2d 762, 766 (D.C. Cir. 1965).

In the case of nonparty deponents, courts recognize that "[d]iscovery should be more limited to protect nonparty deponents from harassment, inconvenience or disclosure of confidential documents." See e.g., Northeast Women's Ctr., Inc. v. McMonagle, 1987 WL 6665, *5 (E.D. Pa. Feb.10, 1987) (citing Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646, 649 (9th Cir.1980)). "A non-party may seek from the court protection from discovery via the overlapping and interrelated provisions of both Rules 26 and 45" of the Federal Rules of Civil Procedure. Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002).

In applying Rules 26 and 45, I must balance several competing factors: "(1) relevance, (2) need, (3) confidentiality, and (4) harm." Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002). "[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Id.; see also Fed. R. Civ. P. 26(b)(2)(C).

I.      The Amended Complaint

To determine the relevancy of Brunckhorst's request, it is necessary to construe the elements of the claims in the complaint. <u>Pepsi-Cola Metro. Bottling Co., Inc.</u>, 2011 WL 239655, at *3. In doing so I am mindful that the California Court has already made efforts toward this end, and see no reason to disagree with its characterizations of the legal basis of Brunckhorst's complaint. <u>See</u> No. 11-1883 (S.D. Cal.), Dkt. No. 46, "Order Re Joint Motion for Determination of Discovery Dispute."

Brunckhorst's asserts five claims in the Amended Complaint in the California action. <u>See</u> No. 11-1883 (S.D. Cal.), Dkt. No. 43. In count One, it alleges violations of the Lanham Act. <u>Id.</u> at ECF p. 11. In order to prove its claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), Brunckhorst must establish:

> 1) in advertisements, defendant made false statements of fact about its own or another's product; 2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; 3) such deception is material, in that it is likely to influence the purchasing decision; 4) defendant caused its falsely advertised goods to enter interstate commerce; and 5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public.

<u>Rice v. Fox Broad. Co.</u>, 330 F.3d 1170, 1180 (9th Cir. 2003).

In count Two, Brunckhorst asserts a claim of unfair competition under the California Business and Professions Code Section 17200. <u>See</u> No. 11-1883 (S.D. Cal.), Dkt. No. 43, ECF p. 13. Under this section, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200 (West). To prevail on this claim, Brunckhorst must establish that the defendants' practices were either unlawful (i.e., forbidden by law), unfair (i.e., the harm to

victim outweighs any benefit) or fraudulent (i.e., likely to deceive members of the public).
Albillo v. Intermodal Container Services, Inc., 114 Cal. App. 4th 190, 206 (Cal. Ct. App. 2003).

In count Three, Brunckhorst asserts a breach of contract claim.  See No. 11-1883 (S.D. Cal.), Dkt. No. 43, ECF p. 14.  A cause of action for breach of contract under California law requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.  CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (Cal. Ct. App. 2008). In California, contracts which do not expressly specify a term of duration are generally terminable at will.  Zee Med. Distrib. Ass'n, Inc. v. Zee Med., Inc., 80 Cal. App. 4th 1, 10 (Cal. Ct. App. 2000) ("If neither an express nor an implied term can be found, the court will generally construe the contract as terminable at will.").  In construing "exclusive sales agency and distributorship contracts" which do not include an express term of duration "the law usually implies that the term of duration shall be at least a reasonable time, and that the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable  time has elapsed."  Consolidated Theatres, Inc. v. Theatrical Stage Emps. Union, 69 Cal. 2d. 713, 727-28 (Cal. 1968).

In count Four, Brunckhorst asserts a claim for a breach of the duty of good faith and fair dealing.  See No. 11-1883 (S.D. Cal.), Dkt. No. 43, ECF p. 15.  "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  Marsu, B.V. v.  Walt Disney Co., 185 F.3d 932, 937 (9th Cir. l999) (applying California law).  The duty of good faith and fair dealing requires "that neither party . . . do anything which will injure the right of the other to receive the benefits of the agreement."  Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (Ca;. Ct. App. 2005).  "The implied covenant of good faith and fair

10

dealing is limited to assuring compliance with the express terms of the contract and cannot be extended to create obligations not contemplated by the contract." Pasadena Live, LLC v. City of Pasadena, 114 Cal. App. 4th 1089, 1094 (Cal. Ct. App. 2004). An implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 349-350 (Cal. 2000).

In count Five, Brunckhorst alleges an intentional interference with prospective economic advantage by defendants. See No. 11-1883 (S.D. Cal.), Dkt. No. 43, ECF p. 17. Under California law, the elements of the tort of intentional interference with prospective economic advantage are

> "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."

Marsh v. Anesthesia Serv. Med. Group, Inc., 200 Cal. App. 4th 480, 504 (Cal. Ct. App. 2011). The third element of the tort of interference with prospective economic advantage "also requires a plaintiff to plead intentional wrongful acts on the part of the defendant designed to disrupt the relationship." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1154 (Cal. 2003).

II.     The Document Requests and Matters for Examination

While I am mindful that a non-party is not a participant in the litigation and no claim has been asserted by or against it, I find that D&W is both a key witness in the underlying litigation and has access to key information that the defendants have been unable or unwilling to produce in the California litigation. For purposes of this motion, I will break Brunckhorst's document

requests and matters for examination[4] into three categories: those covered by the September 26, 2012 Order of the California Court; those that I find Brunckhorst is entitled to subject to a protective order; and, those that I find in need of some modification in order to protect D&W, a nonparty in the underlying litigation.

A. Documents and Topics Covered by the September 26, 2012 Order in the California Litigation

In comparing the language of the document requests considered in the September 26, 2012 Order in the California litigation with the language contained in the subpoena to D&W, I find that the documents identified by Brunckhorst's Documents to Be Produced ("RFD") 1, 2, 4, 5 and 7 have already been deemed relevant by the California Court, and have been ordered produced by the defendants subject to the protective order operative in that case.[5] See "Order Re Joint Motion for Determination of Discovery Dispute," No. 11-1883 (S.D. Cal.), Dkt. No. 46, ECF p. 9-21. The only document that the California Court ruled defendants were not required to produce was D&W's "Confidential Policy," because the information it contains "is proprietary and D&W could be significantly harmed if its trade secrets were revealed." Id. at 16.[6] Because

---

[4] The Matters for Examination and Documents to Be Produced attached to the subpoena to D&W are nearly identical and I find that they can be considered together. See No. 12-0217 (E.D. Pa.), Dkt. No. 6-2, ECF p. 5-6, 12-15; see also No. 12-0217, Dkt. No. 6, Hyman Decl. Ex 1. The arguments contained in D&W's motion to quash focus chiefly on the subpoena directed to D&W. The subpoena directed to Mr. Eni makes no reference to matters for examination or documents to be produced, but merely directs him to appear at a deposition in connection with the California litigation. See No. 12-0217, Dkt. No. 6, Hyman Decl. Ex 2. Because I find that the subpoena directed to D&W seeks information relevant to the litigation (and not trade secrets), without a more specific argument as to why the subpoena directed to Mr. Eni is unduly burdensome, I find that Brunckhorst is entitled to examine him in connection with the underlying California action.

[5] These RFDs correspond directly to Matters for Examination 4, 5, 7 (RFD 4 and RFD 5), 9 and 10 respectively. See No. 12-0217, Dkt. No. 6, Hyman Decl. Ex 2.

[6] Defendants in the California action contended that the only responsive documents that they possessed in response to requests that are substantially the same as RFD 1 and 2 directed to

Brunckhorst requests identical documents from D&W and the defendants and because the Court found those documents relevant to the claims in the California litigation, I will not differ with its determinations as to those requests.

D&W argues that I am not bound by that Court's ruling because D&W was not a party there and was not represented in the California lawsuit.  Dkt. No. 7, p. 9-10.  While this is correct, I am, however, entitled to give some deference to the California Court, which is more familiar with the familiar with the underlying facts, has developed an extensive record and already has had the opportunity to consider the legal issues bound up with the discovery disputes concerning confidentiality and trade secrets.[7]  The documents sought in the subpoena directed to D&W are probative of the negotiations leading up to the agreement between defendants and D&W, which are relevant to the claims in the underlying lawsuit.  To the extent that these documents are confidential, the protective order in operation in the California case as well as the one to be issued by this Court are sufficient protection against the risk of harm to D&W due to an inadvertent disclosure of this information to D&W's other distributors or its competitors.  Thus, D&W must respond to RFD 1,2, 4, 5, 7 and 8, and include in its production a copy of the Compensation Agreement (which still has not been produced by defendants in the California

---

D&W were the Confidential Policy and the Confidential Compensation Agreement between D&W and defendants.  See No. 11-1883 (S.D. Cal.), Dkt. No. 46, ECF p. 9.  While ruling that both documents were "D&W's protected commercial information," the California Court ordered production of the Compensation Agreement because of its "relevance and [Brunckhorst's] need for this document for an effective prosecution of this case.  Id. at 9, 15.  While Brunckhorst has withdrawn its request for the Confidential Policy, its proposed order seeks "to ask questions about the negotiation, execution and content of the Confidential Policy" during the depositions of D&W and Louis J. Eni, Jr.  No. 12-0217 (E.D. Pa.), Dkt. No. 6, ECF p. 1-2.  It follows from the above reasoning that Brunckhorst may inquire during the depositions as to the negotiations between D&W and defendants and the circumstances of the execution of the execution of the Confidential Policy but not the contents of the policy.

[7] See No. 12-0217 (E.D. Pa.), Dkt. No. 16, ECF, p. 10-12.

litigation in compliance with that Court's Order of September 26, 2012)  and be prepared to

address these topics in the deposition. See No. 12-0217, Dkt. No 13-1, Becker Decl. ¶3-5.[8]

>    B.  Documents and Topics Not Covered by the September 26, 2012 Order in the
>        California Litigation Discoverable Without Modification

I find that RFD 3, 9, 10, 11, 14 and 15 are specifically focused on D&W's dealings with

defendants and retailers serviced by defendants.[9]  These requests and the parallel matters for

---

[8] Defendants argue that they are unable to comply with the California Court's Order to produce the Compensation Agreement "as they do not have physical possession or control of the Compensation Agreement and D&W is unwilling to provide Defendants with a copy of the document." See No. 12-0217, Dkt. No 13-1, Becker Decl. ¶6. However, "control" comprises more than mere physical possession but also is defined as "the legal right, authority or ability to obtain documents upon demand. Camden Iron & Metal, Inc. v. Marubeni Am. Corp., 138 F.R.D. 438, 441 (D.N.J. 1991); see also Searock v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984); M.L.C., Inc. v. North Am. Philips Corp., 109 F.R.D. 134, 136 (S.D.N.Y. 1986); In re Folding Carton Antitrust Litig., 76 F.R.D. 420, 423 (N.D. Ill. 1977). As the California Court in the Order compelling defendants to produce a copy of the Compensation agreement stated

> Ihm is not only a signatory to the Compensation Agreement, he distributes D&W's products and obviously has a close working relationship with D&W. In the form of declarations from its president and chief executive officer, D&W has already provided detailed information to support Ihm in this litigation. There is no question he has a legal right to obtain a copy of the Compensation Agreement upon demand. Ihm and D&W are not entitled to dictate or choose the manner in which they parcel out information in response to appropriate discovery requests, particularly given the relevance and need for this document for an effective prosecution of this case.

No. 11-1883 (S.D. Cal.), Dkt. No. 46, ECF p. 15. While it is not apparent from the record why defendants do not possess a copy of the Compensation Agreement, a contract to which they are a party, D&W has refused to "produce the compensation agreement absent an order" from this Court. See No. 12-0217 (E.D. Pa.), Dkt. No 13-1, Becker Decl. ¶6, and Ex. A.

[9] Apart from RFD 3, these RFDs correspond directly to Matters for Examination 11, 12, 13, 14 and 15  respectively. See No. 12-0217, Dkt. No. 6, Hyman Decl. Ex 2. RFD 3 does not have its own Matter for Examination, but is covered by Matter for Examination 1, which states as a topic "[a]ny matter contained or referred to in any documents responsive to the requests set forth in Attachment B to this subpoena." Id. RFD 3 is also substantially similar to Matter for Examination 6. Id. at ECF p. 12, 5.

examination do not call for trade secrets nor do they seek discovery from D&W regarding its internal affairs, strategies and confidential commercial information regarding parties other than the defendants in the underlying litigation.  The requested documents likely contain information relevant and necessary to prove the claims in the California litigation, including whether defendants engaged in deceptive trade practices, any breach of the contract between defendants and Brunckhorst (or of the implied duties of good faith and fair dealing), and whether defendants interfered with Brunckhorst's relationships with the retailers that defendants distributed Brunckhorst's products to.  To the extent that the requests call for documents and communications internal to D&W (that defendants do not have), these too are relevant to the general subject matter of the litigation, and thus are discoverable.  Foster v. Berwind Corp., No. 90-0857, 1990 WL 209288, at *6 (E.D. Pa. Dec. 12, 1990), citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  Moreover, production of these materials and participation in the depositions do not present an excessive or unreasonable burden on D&W, which is a key witness in the underlying proceeding.  Pepsi-Cola Metro. Bottling Co., Inc. v. Ins. Co. of N. Am., Inc., No. 10-222, 2011 WL 239655, at *3 (E.D. Pa. Jan. 25, 2011).  Thus, D&W must respond to RFD 3, 9, 10, 11, 14 and 15  these RFD and be prepared to address these topics in the deposition.

C. Documents and Topics Not Covered by the September 26, 2012 Order in the California Litigation Discoverable Only to the Extent that they Concern Defendants' Conduct

I find that RFD 6, 8, 12 and 13 are also relevant to the underlying litigation, but only to the extent that they concern defendants' conduct and interactions with D&W.[10]  I am mindful

---

[10] RFDs 6, 8 and 12 correspond directly to Matters for Examination 8, 10, and 2, respectively.  See No. 12-0217, Dkt. No. 6, Hyman Decl. Ex 2.  RFD 13 does not have its own Matter for Examination, but is covered by Matter for Examination 1, which states as a topic "[a]ny matter contained or referred to in any documents responsive to the requests set forth in

that D&W has not been named a defendant in the California action and so its general policies

and recruitment strategies, methods and procedures are not relevant to the claims pending in

California. To the extent that the requests seek production of internal D&W documents and

communications regarding general strategies of recruitment or any materials nonspecific to the

defendants, they are not relevant to the claims asserted in the California litigation against

defendants. I also find that the production of these materials does not pose an excessive or undue

burden on D&W. Pepsi-Cola Metro. Bottling Co., Inc. v. Ins. Co. of N. Am., Inc., No. 10-222,

2011 WL 239655, at *3 (E.D. Pa. Jan. 25, 2011). For the same reasons as those RFD discussed

above, D&W must respond to RFD 6, 7, 8, 12 and 13 and be prepared to address these topics in

the deposition but only to the extent that D&W has documents relating to its conduct and

interactions with and its plans and communications about the defendants in the California action.

III.    Protective Order

        To balance against any potential harm that D&W may incur from the inadvertent

production of confidential commercial information or trade secrets in response to these RFDs I

find it appropriate to enter a protective order governing the materials at issue here. It is well

established that the party wishing to obtain a protective order has the burden of demonstrating

that "good cause" exists for the order. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d

---

Attachment B to this subpoena." Id. Matter for Examination 2 does not have a corresponding
RFD. Matter for Examination 2 identifies as a topic "the matters discussed in the Declaration of
Louis J. Eni, Jr. in Support of Joint Motion for Determination of Discovery Dispute Regarding
Protective Order, attached hereto as Exhibit 1" (whereas Matter for Examination 3 seeks to
discuss the same with respect to Eni's Second Declaration). RFD 12 seeks only documents
concerning a particular statement Eni made in the Second Declaration. I find that requiring
D&W and Eni to discuss the statements made in each Eni declaration (but only requiring the
production of documents responsive to the statement identified in RFD 12) to be a proper
balance.

Cir. 1994); Fed. R. Civ. P. 26(c).  The Court of Appeals for the Third Circuit has adopted a

general balancing test to apply when considering whether to impose a grant confidentiality order:

> [T]he court ... must balance the requesting party's need for
> information against the injury that might result if uncontrolled
> disclosure is compelled.  When the risk of harm to the owner of [a]
> trade secret or confidential information outweighs the need for
> discovery, disclosure [through discovery] cannot be compelled, but
> this is an infrequent result.

Id. at 787.  Once the court determines that certain materials must be disclosed, the issue becomes

whether they should be revealed only in a specified way.  Id.  Whether this disclosure will be

limited depends on a judicial balancing of the harm to the party seeking protection.  Id.  Courts

have a great deal of flexibility in crafting the contents of protective orders to minimize the

negative consequences of disclosure and serve the public interest simultaneously.  Id.  Most

commonly, courts prevent a party obtaining a confidential document from sharing that document

with others or from using that document for any purpose other than the present litigation.  Id.

Here, as the discovery of confidential information is sought from D&W by a competitor, I find

that good cause exists for granting a protective order.  Coca-Cola Bottling Co. of Shreveport,

Inc. v. Coca-Cola Co., 107 F.R.D. 288, 293 (D. Del. 1985); see also Wear-Guard Corp. v. Van

Dyne-Crotty, Inc., No. 90-1948, 1990 WL 209298, at *3 (E.D. Pa. Dec. 13, 1990)( "Courts ...

will exercise their discretion to avoid unnecessary disclosure of such information, particularly

where the action is between competitors.")

After receiving numerous submissions concerning proposed discovery and the contents of

a protective order governing confidential information in the underlying case, the California Court

granted a comprehensive protective order.  See No. 11-1883 (S.D. Ca.), Dkt. Nos. 19, 20, 21, 24,

26, 27.  The California protective order allows the parties to designate trade secret or sensitive

commercial information produced with the designation "For Attorneys' Eyes Only," restricting

access to that information to "Qualified Persons," which includes both outside counsel and in-house counsel.  No. 11-1883 (S.D. Ca.), Dkt. No. 46, ECF p. 4-5.  That protective order also limits disclosure of the Confidential Policy to outside counsel (unless the Court later Ordered otherwise).  Id. at 5.  However, as noted above, that document and its contents are no longer at issue, with both Courts to rule on the matter finding it to be protected as a trade secret.  The parties have not submitted a proposed protective order to me in their papers regarding the subpoenas at issue.  Therefore, mindful of the California Court's careful consideration of this issue, I will require that the information sought by Brunckhorst's subpoenas be obtained and maintained in conformity with the protective order entered by the California Court on March 8, 2012.  See No. 11-1883 (S.D. Ca.), Dkt. No. 27.

An appropriate Order follows.